**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KYLEE SHAWN LANKFORD,      )
                                   )
             Petitioner,        )     Civil Action No. 2:23-cv-829
                                   )
       v.                   )
                                   )     Magistrate Judge Patricia L. Dodge
ATTORNEY GENERAL OF THE   )
STATE OF PENNSYLVANIA,      )
SUPERINTENDENT OLIVER, and   )
DISTRICT ATTORNEY OF        )
ALLEGHENY COUNTY,          )
                                   )
           Respondents.    )

<u>**MEMORANDUM**</u>

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 4) filed by

Kylee Shawn Lankford ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment

of sentence imposed on him by the Court of Common Pleas of Allegheny County at criminal docket

number CP-02-CR-0011414-2017. For the reasons below, the Court will deny the petition and will

deny a certificate of appealability.

**I.    Relevant Background**

The facts underlying Petitioner's criminal convictions were summarized by the trial court

as follows:

> [Petitioner] was charged … in connection with a robbery and murder that occurred
> in the early morning hours of September 1, 2017. Melanie Robb and Kimberly
> Lesko died in the robbery as a result of gunshot wounds to their faces and trunk.
> Another victim, Mark Jordan, was shot in the face during the robbery and sustained
> serious bodily injury. Robert Brown was also present in the home when the robbery
> and murder occurred. While not legally married, Mr. Brown lived with Ms. Robb

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to
have a United States Magistrate Judge conduct proceedings in this case, including entry of a final
judgment.

for approximately 22 years and the two considered themselves husband and wife.
Mr. Brown was not physically harmed in this incident.

(ECF No. 15-30 at 2-3.)

Petitioner was convicted at a jury trial of murder in the second degree (two counts), robbery (three counts), burglary, conspiracy, and firearms not to be carried without a license. On October 18, 2018, Petitioner was sentenced to, *inter alia*, life imprisonment.

Petitioner appealed, but the Superior Court of Pennsylvania affirmed the judgment of sentence on May 14, 2020. *Commonwealth v. Lankford*, 237 A.3d 452 (Pa. Super. 2020) (unpublished memorandum) (ECF No. 15-33).

On March 24, 2021, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The PCRA court ultimately denied the PCRA petition. Petitioner filed an appeal from the denial. The Superior Court of Pennsylvania affirmed the denial of the PCRA petition on September 29, 2022. *Commonwealth v. Lankford*, 285 A.3d 964 (Pa. Super. 2022) (unpublished memorandum) (ECF No. 15-49). Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied it on March 21, 2023. *Commonwealth v. Lankford*, 294 A.3d 306 (Pa. 2023).

Petitioner placed the instant petition for writ of habeas corpus in the prison mailing system on May 11, 2023. (ECF No. 1 at 15.) Respondents filed an answer. (ECF No. 15) and Petitioner filed a reply. (ECF No. 25.)

## II.    Discussion

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of

2

the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

  B.  <u>Standard of Review</u>

  In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

  A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

  AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies "to any claim that was adjudicated on the merits" by the Superior Court and it prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact. In applying § 2254(d)(1), this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*" *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[2] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it.[3] If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does

---

[2] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

[3] The doctrine of procedural default is discussed below.

not apply and the Court reviews the claim de novo. *See, e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

      C.    <u>Exhaustion and Procedural Default</u>

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[4] *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). A petitioner who defaulted a claim of trial court error may attempt to establish "cause" for the default by arguing that trial counsel was ineffective for failing to challenge the trial court's error. Importantly, however, in order to do so the petitioner must have properly exhausted that claim of trial counsel's ineffectiveness in state court. *See, e.g.*, *Edwards*, 529 U.S. 451-53 (a petitioner can procedurally

---

[4] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice," and this is not one of the rare cases in which that rule is implicated.

default the claim of trial or direct appeal counsel's ineffectiveness that he is relying upon to establish cause for the default of another claim).

Moreover, the general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *Id.*; *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012) the Supreme Court announced a narrow exception to this rule. In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[5] a petitioner may overcome the default of a *claim of trial counsel's ineffectiveness.* To do so, the petitioner must show: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). *Martinez*, 566 U.S. at 17. The holding in *Martinez* is limited to defaulted claims asserting that trial counsel was ineffective. *See, e.g.*, *Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of defaulted claim. *Id.*

Finally, this Court need not resolve the more complex issue of procedural default if it determines that the ineffectiveness claim has no merit, even under a *de novo* review. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (where analysis of procedural default is complex, the court may skip the issue and proceed to the merits).

---

[5] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims must be raised in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)).

D.    Petitioner's Claims

1.    Ground One: Ineffective Assistance of Counsel

In his first claim, Petitioner asserts that his trial counsel was ineffective for: (1) failing to move to suppress the video of his interrogation; (2) failing to move for dismissal based on selective prosecution; (3) failing to move for arrest of judgment; and (4) failing to object or request a mistrial due to prosecution's exploitation of post-arrest silence in its closing. (ECF No. 4 at 5.) Petitioner also asserts that his appellate counsel was ineffective for failing to preserve and argue a sufficiency-of-the-evidence claim and for failing to file a petition for allowance of appeal. (*Id.*)

A defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Titlow*, 571 U.S. at 24.

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689). Counsel cannot be

deemed ineffective for failing to raise a meritless claim. *See, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court in *Strickland* noted that although it had discussed the performance component of an effectiveness claim before the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim because the petitioner failed to meet his burden of showing prejudice, a court need address only that prong. *Id.*

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g., Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]").

a.    Trial Counsel: Interrogation video

Petitioner first asserts that his trial counsel was ineffective for failing to move to suppress the video of his police interrogation. In his Reply, he explains that the interrogation showed that his invoked his right to silence, but that the police kept pressuring him to talk. (ECF No. 25 at 15-16.)

Petitioner raised a substantially similar issue in his PCRA petition. There, he claimed that trial counsel was ineffective for failing to object to the admission of the video on the basis that the jury was led to conclude that his silence in the interrogation was an adverse inference of guilt. (ECF No. 15-49 at 5.) Because both claims share the same basis, *i.e.*, that trial counsel failed to prevent the jury from seeing the video, and the same purported prejudice, *i.e.*, Petitioner's silence being held against him, the Court will consider this claim to have been presented in state court.

In the PCRA appeal, the Superior Court of Pennsylvania held as follows:

On this portion of Appellant's claim, the PCRA court determined:

> [. . . Appellant] alleges trial counsel was ineffective for failing to object to the admission of the videotape of [Appellant's] police interrogation. However, it is clear from the [trial] transcript that trial counsel had a strategic purpose for permitting this testimony. Trial counsel for [Appellant] cross-examined the detectives involved in the interrogation at great length, eliciting testimony from [one] detective that he lied to [Appellant] and used techniques to "break" [Appellant]. It appears a reasonable strategy of tr[ia]l counsel to permit the testimony of the detective in an effort to paint the picture that the interactions between [Appellant] and the police were pressured or coerced and therefore improper or corrupt. Accordingly, [the PCRA c]ourt [found] there was a reasonable strategic basis for trial counsel to permit the videotape of the police interrogation [to be entered into evidence].

PCRA Court Opinion, 3/22/22, at 6.

Upon review, we agree with the PCRA court's assessment. There is no dispute that Appellant did not incriminate himself or implicate another during the recorded police video. Instead, Appellant flatly denied his involvement. After the video of the police interview with Appellant was played for the jury, defense counsel questioned the investigating detective at length about the interview techniques used

by the police. N.T., 7/20/2018, at 20-30. The investigating detective admitted that the police lied to Appellant by telling him there were eyewitnesses to the crimes as "part of the ruse to get a person to confess" and "designed to break down a person's will." *Id.* at 20-22. The investigating detective acknowledged that he continued questioning Appellant even though Appellant asked to stop the interview. *Id.* at 29-30. However, the investigating detective also admitted that Appellant adamantly told the police that he did not commit the crimes. *Id.* at 30.

Moreover, during closing argument, trial counsel argued:

> You [] heard from [the investigating detective who interviewed Appellant]. And you saw the interview of [Appellant]. You got to hear [Appellant's] voice and you got to see him during that interview. And the detective told you we'll lie, we'll make stuff up, we'll try to intimidate on occasion. He said he didn't do it here, but they will on occasion. They would try to ingratiate on occasion and said he didn't do it here. You saw the interview. During the interview, if you need -- if you want to help yourself, you got to tell us what you did. We have evidence, we know they certainly tried to make [Appellant] believe that the two surviving witnesses could tell on him and say that he was the person who did it. And I would submit to you if [Appellant] had done it and there were two surviving people, he would be afraid of that. But what did he say? He said I didn't do this. My life is over. I'm being blamed for this. I'm being arrested for two white women getting killed. My life is done, but I didn't do this. This isn't me, this isn't my family, my family are good people, they are my parents, they're God fearing they're involved in church. I don't do this stuff. Well, they saw you and you need to tell us --maybe you can explain, tell us if you saw a guy with a gun, if you tell us that, maybe that could be your reason why [you] fired, that you were afraid, and that maybe that would mitigate it for you. Right? I mean, we heard this on the tape. And [Appellant] doesn't break down and say I did it, that was me, you're right, if there's eyewitnesses they must have seen me. Obviously if that man saw me shoot him, then he's going to be able to identify me. I better say I saw somebody with a gun, like you suggested, or it wasn't me who shot, it was the other guy. He doesn't do any of that. He doesn't try to lay it off on somebody else. He says, I didn't do this, it wasn't me.

> Whatever you feel about the strategy utilized by [the investigating detectives] in trying to get this confession, and I know I have my own feelings, there is a lot of talk in legal circles about the propensity, especially amongst young men of false confessions after being made fearful by police and being told the only way to get out of it, the only way to see daylight, the only way for you to not lose the rest of your life is to admit it, and suggesting what might have happened and giving those kind of cues. I have my own feelings about that, because I think it's wrong. And I don't think we should engage in that, but obviously to some degree it's legal, although what sense does it make when you read *Miranda* warnings and tell an individual you can stop

whenever you want. And [Appellant] said I don't want to talk anymore, but he doesn't give the magic "lawyer" word, and so we'll keep going. We'll keep trying to make him talk. It doesn't matter if he says he wants to stop, even though we told him he could stop if he wanted to, I guess that's okay. You guys can think about whether that's okay, but that might even be a subject for another day, because despite that and despite that we know -- despite the fact we know that on occasion that coerces false confessions. Here [Appellant] said I didn't do it.

N.T., 7/20/2018, at 71-74.

Taken altogether, we discern no abuse of discretion or error of law in rejecting Appellant's claim of trial counsel ineffectiveness. Trial counsel had a reasonable strategy for allowing the jury to see and hear the recorded police interview. In that interview, Appellant consistently denied his involvement in the crimes at issue, even when faced with admittedly coercive police tactics. Eventually, Appellant requested that the police end the interview. In closing argument, trial counsel urged the jury to find Appellant not guilty because, as the video confirmed, he repeatedly denied involvement despite pressure from police interrogators. Under these circumstances, we reject Appellant's suggestion on appeal that trial counsel lacked a reasonable strategy in forgoing an objection to the video tape because "the sole purpose of showing the jury the tape was to highlight [Appellant's] silence by refusing to implicate anyone in the commission of the crime" or that the "jurors were likely to view [Appellant's] silence as a tacit admission of guilt." Appellant's Brief at 10-11. Here, Appellant adamantly disavowed his role in the robbery and shootings to the police before exercising his right to remain silent. As such, we agree with the PCRA court that counsel pursued a reasonable trial strategy, i.e. one that furthered the interest of his client, in using the video to visually and audibly demonstrate for the factfinder how the police improperly or corruptly pressured or coerced Appellant during the interrogation. Moreover, in the absence of Appellant's live testimony at trial, the video allowed the jury to observe Appellant, in his own voice and image, disavow his involvement to police. Based upon our review of the record and applicable law, it cannot be said that trial counsel was ineffective for failing to object to the admission of the videotaped police interrogation because trial counsel had a reasonable strategy. As such, the first portion of Appellant's claim fails.

(*Id.* at 5-8 )(brackets in original).

The Superior Court found no ineffectiveness in trial counsel's failure to prevent this evidence from being admitted because "trial counsel had a reasonable strategy for allowing the jury to see and hear the recorded police interview." (*Id.* at 7.) In doing so, the Superior Court applied the correct *Strickland* analysis in its evaluation of the claim.

14

Petitioner does not address the Superior Court's holding. As such, he has failed to show that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States,[6] or that it was based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

        b.      Trial Counsel: Selective Prosecution

Petitioner next asserts that trial counsel was ineffective for failing to seek dismissal of the charges on the basis of selective prosecution. (ECF No. 25 at 17-191.) Petitioner did not raise this claim in state court. As Respondents correctly assert, this claim is unexhausted and procedurally defaulted. (ECF No. 15 at 26-27.)

In what may be an attempt to overcome the procedural default, Petitioner asserts, in his Reply, that PCRA counsel was ineffective for abandoning the issues Petitioner raised in his *pro se* PCRA petition[7] in order "to pursue the issue that she thought was the most meritorious." (ECF No. 25 at 13-14.) To the extent that Petitioner is tacitly invoking *Martinez,* the attempt fails. To do so, Petitioner must do more than assert that PCRA counsel failed to raise the claims that he wanted her to raise; as set forth above, he must show: (1) the defaulted claim of trial counsel's

---

[6] Petitioner does cite to Supreme Court cases to show that he properly invoked his right to remain silent and that such silence cannot be used against him, (ECF No. 25 at 15-16), but he does not make any effort to show how the law set forth in these cases was unreasonably applied by the Superior Court.

[7] Petitioner did reference selective prosecution in his *pro se* PCRA petition, although he raised it in the context of a claim he wished to raise if his "appeal [was] allowed." (ECF No. 15-34 at 4.) When PCRA counsel was appointed, she filed an amended PCRA petition in which the sole relief sought was restoration of Petitioner's direct appeal right to file a petition for allowance of appeal in the Supreme Court of Pennsylvania. (ECF No. 15-35.) She later supplemented the PCRA petition to add claims of trial counsel's ineffectiveness for failing to object to the admission of the interrogation video and for failing to object to the prosecutor's exploitation of Petitioner's post-arrest silence. (ECF No. 15-38.)

15

ineffectiveness is "substantial," and (2) PCRA counsel was ineffective under *Strickland* for (3) failing to raise that claim to the PCRA court. He has not done so. However, rather than analyzing and resolving the issue of procedural default, this Court will proceed to the merits because the ineffectiveness claim has no merit, even under a *de novo* review.

As this Court has explained:

A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive. *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). To establish selective prosecution, a defendant must demonstrate both that (1) persons similarly situated have not been prosecuted; and that (2) the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or to prevent the defendant from exercising a fundamental right. *Id.* The defendant bears the burden of proof, *id.*, and must establish each of these elements with "clear evidence" sufficient to overcome the presumption of regularity that attaches to decisions to prosecute, *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

*Brookins v. United States*, 2013 WL 364231, at *7 (W.D. Pa. Jan. 30, 2013).

Petitioner summarizes his underlying claim as follows:

This case involves a tragic event that ended the lives of 2 older women and the serious injury of 1 gentleman. This event took place on September 1, 2017 in the early morning hours. There are no eyewitness accounts on what exactly happened and whom exactly did the act of killing and injuring. However, the police were able to come up with 4 suspects. Petitioner happened to be the unlucky one to get arrested last as a suspect.

Suspects Kirk and Dalyn were arrested 5 days after the event. Miras was arrested 6 days after the event. Petitioner was arrested after those 3 individuals whom already spoke between themselves and with the Commonwealth to "pin" the crime on Petitioner and "fry" him to the fullest extent of the law.

When Kirk, Dalyn and Miras were arrested they all chose to cooperate with detectives. However, when Petitioner was arrested he told them that "I didn't shoot them" and; "I don't want to talk to anyone." Due to Petitioner's refusal to talk the detectives selected to prosecute Petitioner and the Commonwealth reaffirmed the decision. They selected to prosecute Petitioner 'because of' the adverse effects it would have on him and selected to not prosecute individuals 'similarly situated', such as, Kirk who was given immunity for his testimony and Miras who was offered a plea deal of ten to forty years. Both of whom testified they would not have provided their testimony if not for the deals.

*** 

It is clear from this record that Petitioner was selected to be prosecuted for this crime to the fullest extent of the law based upon his exercise of his right to remain silent.

(ECF No. 25 at 18-19) (citations to trial testimony omitted).

These bald statements fall well short of establishing a claim of selective prosecution. Petitioner offers nothing to show that he was similarly situated to Dylan, Kirk, and Miras, other than that they were all determined to be suspects in this crime. Further, he offers nothing to show that his prosecution was discriminatory in nature. Therefore, he is not entitled to habeas relief on this claim.

### c.    Trial Counsel: Arrest of Judgment

Petitioner next asserts that trial counsel was ineffective for failing to move for an arrest of judgment at the close of the trial. Petitioner did not raise this claim in state court. As Respondents correctly assert, this claim is unexhausted and procedurally defaulted. (ECF No. 15 at 28-29.)

As with the claim above, Petitioner's apparent attempt to overcome the default of this claim by alleging that PCRA counsel failed to raise all of the claims in the amended PCRA petition that he raised in his *pro se* petition[8] falls short. Also as explained above, this Court will move directly to the merits of the underlying claim rather than the more complex analysis of default.

Petitioner argues there was not "sufficient credible evidence" to support his convictions. (ECF No. 25 at 24.) He misapprehends the standard of review for an arrest of judgment because it does not rest on determinations of credibility. As the Superior Court of Pennsylvania has explained:

---

[8] Petitioner raised this claim in the *pro se* PCRA petition. (ECF No. 15-34 at 4.)

When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining the absence or presence of that quantum of evidence necessary to establish the elements of the crime. At this stage in the proceedings, the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence. . . .

\*\*\*

In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the entire trial record. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.

In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged.

*Commonwealth v. Marquez*, 980 A.2d 145, 147-48 (Pa. Super. 2019) (quotation marks and citations omitted) (brackets in original).

Petitioner's argument, that "the only evidence presented was testimony from people that were also accused of the crimes and were lucky enough to be offered immunity and reduced sentences," (ECF No. 25 at 22), has no merit. As explained above, the trial court cannot make a redetermination of the credibility and weight of the evidence. Thus, Petitioner is not entitled to habeas relief on this claim.

d.    Trial Counsel: Post-arrest Silence

Petitioner asserts a claim of ineffective assistance of counsel for failure "to object or request mistrial due to prosecution['']s exploitation of my post-arrest silence in closing." (ECF No. 4 at 5.) This claim was reviewed by the state courts in the litigation of Petitioner's PCRA petition. The Superior Court, applying *Strickland*, addressed it as follows:

Next, in support of his argument that trial counsel was ineffective for failing to object to the Commonwealth's closing argument, Appellant submits:

> During closing argument, the [Commonwealth] highlighted [Appellant's] silence by arguing, "When he's in that interview room he doesn't say, look, this is me, this is my life, it was Cameron. He doesn't say that."

[Appellant's Brief] at 10. Appellant claims that "the Commonwealth told the jury what it believed [Appellant] should have said if in fact he were innocent and he knew that someone else committed the crime." *Id.* at 17; *see also id.* at 15 ("By the prosecutor suggesting what he believed [Appellant] should have but did not say to police, this amounted to the Commonwealth commenting on [Appellant] exercising his federal and state constitutional right to remain silent."). As a result, Appellant argues that trial counsel was ineffective for failing to object to the Commonwealth's closing argument. *Id.* at 17.

Our Supreme Court previously determined:

> a claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.
>
> * * *
>
> [Our Supreme Court] has recognized that counsel [is] not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forgo objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler*, 36 A.3d 121, 144-146 (Pa. 2012) (internal citations, quotations, and original brackets omitted). Furthermore, "[a] prosecutor does not

engage in misconduct when his statements are based on the evidence or made with oratorical flair." *Commonwealth v. Carson*, 913 A.2d 220, 237 (Pa. 2006) (citation omitted). "Additionally, a prosecutor must be permitted to respond to arguments made by the defense." *Id.* (citation omitted). Finally, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super.2006) (citation omitted).

Initially, the PCRA court noted that Appellant "mischaracterizes the statement made by counsel for the Commonwealth" during closing argument by relying upon an isolated comment and omitting the statements made thereafter. PCRA Court Opinion, 3/22/22, at 7. More specifically, the PCRA court recognized:

> The statement alleged by [Appellant] in his PCRA [petition] is as follows: "When [Appellant's] in the interview room he doesn't say, look, this is me, this is my life, it was Cameron. He doesn't say that." However, this [was] not the end of the sentence, [] the Commonwealth continues to say[,] "He doesn't say that. [Appellant] says he was with Miras and we all know where Miras was." Thus, [Appellant] mischaracterizes the statement made by counsel for the Commonwealth. The Commonwealth was not "exploiting" [Appellant's] post-arrest silence, [it] was pointing out inconsistencies/consistencies in the testimony of witnesses and addressing the arguments made by trial counsel for [Appellant] in his closing.

*Id.*

We agree with the PCRA court's analysis. Appellant misconstrued the closing statement at issue and isolated a single comment out of context. In total, the comments challenged on appeal related to the evidence presented at trial and constituted fair response to defense counsel's closing remarks as set forth above at length in our examination of Appellant's first contention on appeal. The Commonwealth simply did not comment on Appellant's silence. Rather, the Commonwealth focused on what Appellant actually said to the police when he admitted that he was with co-defendant, Miras Kelly, at the time of the crimes. As such, we conclude the Commonwealth did not commit prosecutorial misconduct and there is no merit to Appellant's claim that trial counsel was ineffective for failing to object to the Commonwealth's closing argument.

We also recognize that the Pennsylvania Supreme Court has held that "the arguments of counsel are not evidence." *Commonwealth v. Philistin*, 53 A.3d 1, 14 (Pa. 2012) (citation omitted). Hence, an "appellant [is] not prejudiced by [the Commonwealth's closing] remark[s when] the trial court instruct[s] the jury in its general cautionary instruction following closing arguments that none of the closing arguments [is] evidence since the jury is the sole finder of facts from the evidence presented at trial and the sole judge of a witness' credibility." *Commonwealth v.*

> *Hawkins*, 701 A.2d 492, 511 (Pa. 1997) (citation omitted) (our law presumes that juries follow the court's instructions as to the applicable law). Here, the trial court instructed the jury that the arguments of counsel were not evidence and that the jurors were the sole factfinders. N.T., 7/20/2018, at 99-100. As such, we presume that the jury followed the trial court's instruction. Accordingly, for all of the foregoing reasons, we agree with the PCRA court that Appellant is not entitled to relief on his interrelated claims of trial counsel ineffectiveness.

(ECF No. 15-49 at 8-12.)

Petitioner does not address the Superior Court's holding on this claim. Indeed, he does not address this claim at all in his Reply. As such, he has failed to carry this burden to show he is entitled to habeas relief on this claim.

### e.    Appellate Counsel: Sufficiency of the Evidence

Petitioner asserts that his appellate counsel was ineffective for failing to preserve and argue a sufficiency-of-the-evidence claim. (ECF No. 4 at 6.) Petitioner did not raise this claim in state court. As Respondents correctly assert, this claim is unexhausted and procedurally defaulted. (ECF No. 15 at 35-36.)

To the extent that Petitioner attempts to overcome the default of this claim by alleging that PCRA counsel failed to raise all of the claims in the amended PCRA petition that he raised in his *pro se* petition,[9] he may not do so. *Martinez* only applies to defaulted claims that trial counsel was ineffective; it does not apply to claims of direct appeal counsel's ineffectiveness. *Martinez*, 566 U.S. at 17; *Davila*, 137 S. Ct. at 2062.

Petitioner is not entitled to habeas relief on this claim.

### f.    Appellate Counsel: Petition for Allowance of Appeal

Finally, Petitioner asserts that his appellate counsel was ineffective for failing to file a petition for allowance of appeal to the Supreme Court of Pennsylvania. (ECF No. 4 at 6.) As

---

[9] Petitioner raised this claim in the *pro se* PCRA petition. (ECF No. 15-34 at 4.)

explained above, § 2254 limits the claims that a state prisoner can raise in a federal habeas proceeding to those that assert violations of the United States Constitution. A claim of ineffectiveness of counsel is cognizable in a federal habeas proceeding only if there is a federal right to counsel at the stage when counsel is alleged to have been ineffective. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Here, at the point where appellate counsel is alleged to have been ineffective—during the discretionary appeal to the Supreme Court of Pennsylvania— Petitioner did not have a federal constitutional right to counsel. *Wainwright v. Torna*, 455 U.S. 586 (1982) (per curiam) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974) and holding that there is no federal constitutional right to counsel when applying to state supreme court for discretionary review).

Accordingly, this claim is denied because it is not cognizable under § 2254.

E.    Ground Two: Weight of the Evidence

In his second claim, entitled, "Sufficiency of the Evidence," Petitioner lists the following supporting facts:

> Commonwealth's witnesses provided suspect testimony; they contradicted their testimonies at grand jury, they all had motives to say the things they said, all of their testimonies vary from each others['] versions of the events that happened on the night in question. 2 of the witnesses were offered deals in hopes of cooperation, no physical evidence was recovered to link [Petitioner] to the scene.

(ECF No. 4 at 7.)

Although the claim is nominally to the sufficiency of the evidence, in substance, it is a challenge to the weight of the evidence. *Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa. Super. 2018) (explaining that credibility challenges go to the weight, not the sufficiency of the evidence). Indeed, Petitioner raised a substantially similar challenge to the weight of the evidence in his direct appeal in which he cited alleged inconsistencies in the testimony of the Commonwealth's

witnesses and the absence of physical evidence to support his weight argument. The Superior Court found the claim to be without merit. (ECF No. 15-33 at 2-5.)

This Court lacks the authority to review the Superior Court's decision or grant Petitioner relief on a weight-of-the-evidence claim because it is purely a state law claim that is not cognizable under § 2254(a). *See Tibbs v. Florida*, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); *see, e.g.*, *McKinnon v. Sup't, Great Meadow Corr. Facility*, 422 Fed. Appx. 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"; *Stephenson v. Gilmore*, No. 2:18-cv-1329, 2021 WL 3667904, at *14 (W.D. Pa. Feb. 23, 2021), report and recommendation adopted, 2021 WL 2882441 (W.D. Pa. July 9, 2021).

Petitioner is not entitled to habeas relief on this ground.

F.    Motion for Discovery

Petitioner has also filed a Motion to Compel Discovery (ECF No. 28), in which he seeks to obtain the grand jury testimony of Miras Kelly. He attaches a motion seeking this information that his trial counsel filed prior to his trial. (ECF No. 28-1 at 1-4.) That motion was denied by the trial court "based on representation that no such material exists." (ECF No. 28-1 at 5.) Petitioner asserts that "if no such materials existed, prior counsel would not have raised that he: 'discovered that the co-defendant Miras Kelly is cooperating with the prosecution, and will be testifying against the Defendant.'" (ECF No. 28 at 2.) He further asserts that without the information sought, he has been denied "the opportunity to confront his witnesses." (*Id.*)

Respondents have filed an answer to this motion, in which they argue that Petitioner's motion should be denied because his assertion that the information he seeks exists is speculative

and is not essential to any of the claims he asserts in his petition. (ECF No. 30.) They further argue that Petitioner had the opportunity to, and did, cross examine Miras Kelly at trial; thus, his right to confront this witness was not violated. (*Id.*)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). *See also Harris v. Nelson*, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding.") Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief[.]" *Harris*, 394 U.S. at 300. *See also Bracy*, 520 U.S. at 908-09.

The "burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011). "[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

Petitioner has not demonstrated "good cause" for discovery. His assertion that the information he seeks exists is mere speculation. Rule 6 does not authorize what is commonly referred to as a "fishing expedition," and it is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims or would give support to a new claim. *See, e.g.*, *Williams*, 637 F.3d at 210-11 (the petitioner's discovery request

"amounts to an entreaty to engage in a fishing expedition. The law is clear, however, that such speculative discovery requests should be rejected.")

This motion will be denied.

## III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether Petitioner's claims should be denied for the reasons given herein. Thus, a certificate of appealability will be denied with respect to his claims.

**IV.    Conclusion**

For these reasons, the Court will deny the petition and will deny a certificate of appealability. The Motion to Compel Discovery will also be denied.

Appropriate Orders follow.


Dated: January 28, 2025                              /s/ Patricia L. Dodge
                                                     PATRICIA L. DODGE
                                                     United States Magistrate Judge